IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MICHAEL P. STEWART, #291-596        *

Plaintiff                            *

v                                    *     Civil Action No. ELH-12-1180

L. YULZY, CD 2,                      *
J. TICHNELL, CD 2,
SGT. BAKER, and                      *
BOBBY P. SHEARIN, Warden.
                                     *
Defendants
                                    ***

**MEMORANDUM**

Plaintiff Michael P. Stewart, who is self represented, filed this suit pursuant to 42 U.S.C. § 1983, raising claims with regard to an incident that occurred on June 27, 2011, at the North Branch Correctional Institution ("NBCI"), where Stewart was then incarcerated.[1] Specifically, plaintiff alleges that he was subjected to excessive force by defendants and was denied access to a medical appointment, which constituted cruel and unusual punishment under the Eighth Amendment to the Constitution. Plaintiff seeks injunctive relief requiring him to be examined by a medical specialist outside the institution and compensatory damages of $10,000 from each defendant. ECF 1 at 5. He has also requested the appointment of counsel. *See* ECF 27.

Defendants, Warden Bobby Shearin and Correctional Officers Justin Yutzy,[2] Jordan

---

[1] Although plaintiff was housed at NBCI when he filed suit, he is presently confined at the Maryland Correctional Institution-Jessup in Jessup, Maryland. *See* ECF 29.

[2] Plaintiff misspelled the name as "Yulzy" in the Complaint. Defense Counsel indicates there is no one by that name at NBCI, but there is an officer J.Yutzy. ECF 21, n. 1. The court will hereinafter refer to this defendant by the surname "Yutzy," and direct the Clerk to amend the docket to correct the spelling of his name.

Tichnell, and Sergeant Robert Baker, responded to the complaint with a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment ("Motion," ECF 21), accompanied by exhibits and affidavits. Plaintiff opposes the Motion. ECF 23, ECF 24.[3]

## BACKGROUND

### A. Plaintiff's Allegations

At about 6:09 p.m. on June 27, 2011, plaintiff was called to the medical unit at NBCI. When he arrived, Officers Yutzy and Tichnell informed him the medical unit was available at that time only for physical exams for inmate dietary workers. Plaintiff told both officers that he had been summoned for a medical appointment. The officers ordered plaintiff to return to his cell. Plaintiff states he promptly complied with the order. ECF 1 at 3-4.

Later that evening, at about 7:10 p.m., Yutzy and Tichnell ordered plaintiff to step out of his cell. Plaintiff avers that they "aggressively" pushed him against the wall and ordered him to place his hands behind his back. Plaintiff asserts: "It was at that moment that I brought it to the officers['] attention that I have a medical problem with 'fluid' and that large cuffs would be needed- and that I have medical papers to support my medical claim and problem." ECF 1 at 4.[4] Plaintiff contends that he "showed" Yutzy and Tichnell the medical order for large handcuffs and leg irons. ECF 23 at 3. According to plaintiff, Yutzy's only response was to ask plaintiff whether he was threatening Yutzy. ECF 1 at 4.

---

[3] Plaintiff explains that he deliberately filed two identical oppositions in order to ensure receipt by the court. ECF 24 at 6. Plaintiff was provided an opportunity to file affidavits with his opposition, in accordance with the requirements of *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir.1975). ECF 22. However, he has not done so.

[4] Plaintiff has not filed a copy of the medical directive he allegedly presented to the officers.

2

Plaintiff alleges that, "without any provocation" by him, the officers proceeded by "forcing the small (regular)" handcuffs on plaintiff's wrists, although plaintiff told them he was in pain and that the handcuffs were hurting him. *Id*. He explains that the officers used "5 inch handcuffs on plaintiffs [sic] **9 inch wrists**," and that it took two minutes to force the handcuffs onto plaintiff's wrists, which were swollen due to fluid retention. ECF 23 at 1, 2. Moreover, plaintiff alleges that defendants knew of the medical order for him, requiring the use of large handcuffs, yet acted in violation of the medical order. *Id*. at 2, 3. Plaintiff contends that he subsequently complained of pain for approximately one hour, but the officers' only response was to ask, "are you threatening us?" ECF 23 at 2. Plaintiff also called for Sergeant Baker. By the time Baker arrived, plaintiff's hands were black. Plaintiff explained his medical problem and showed his hands to Baker, who did nothing. ECF 1 at 4; ECF 23 at 2.

On June 28, 2011, plaintiff was seen by medical providers and placed on pain medication. He "must wear wrist braces for support at all times," and was diagnosed with carpal tunnel syndrome. ECF 23 at 2. According to Stewart, a physician recently recommended that he undergo surgery to release the pressure on the median nerve of his wrist. ECF 25.[5]

### B. Defendants' Response

Among the documents filed by defendants are medical assignment sheets for plaintiff. The medical assignment sheet dated July 6, 2011, directs the use of large cuffs on plaintiff's hands and ankles. ECF 21, Exhibit 2. Notably, the assignment sheet is dated after the events at

---

[5] Plaintiff does not state whether he has been diagnosed with carpal tunnel in one or in both hands. Nor does he specify which wrist requires surgery. Carpal tunnel syndrome occurs when the median nerve, which runs from the forearm into the palm of the hand, becomes pressed or squeezed at the wrist.
http://www.ninds.nih.gov/disorders/carpal_tunnel/detail_carpal_tunnel.htm.

issue took place. The second assignment sheet, dated September 15, 2008, was issued at the Jessup Correctional Institution, where plaintiff had been confined. It indicates that he has swollen ankles. ECF 21, Exhibit 1; *see also* ECF 21-1 at 2..

Defendants dispute plaintiff's account of the events on June 27, 2011. According to defendants, when Yutzy and Tichnell went to plaintiff's cell on June 27, 2011, they followed standard procedure, which calls for placing inmates in restraints during a cell search to insure officer safety. ECF 21, Exhibit 4 at ¶ 4. Because plaintiff is a large individual and requires large handcuffs, Yutzy connected two sets of hand restraints together to increase their size before placing them on plaintiff's wrists, so as to allow plaintiff more movement. ECF 21, Exhibit 4 at ¶ 4; Exhibit 5 at ¶4. After handcuffs were applied, Officer Yutzy complied with plaintiff's request to loosen them around his wrists. *See id*. Yutzy and Tichnell deny shoving, pushing, or using excessive force against plaintiff. ECF 21, Exhibit 4 at ¶ 4; Exhibit 5 at ¶ 4.

Baker attests that, "[u]pon the initial application of the hand restraints, Michael Stewart expressed concerns that the restraints were uncomfortable. I requested Officer Yutzy to loosen the hand restraints, which he did in my presence." ECF 21, Exhibit at ¶ 4.[6] Baker states that he observed Yutzy loosen plaintiff's handcuffs. ECF 21, Exhibit 6, at ¶ 4. According to Baker, Yutzy, and Tichnell, plaintiff did not express further complaints during the remainder of the cell search. ECF 21, Exhibit 4 at ¶ 4; Exhibit 5 at ¶ 4; Exhibit 6 at ¶ 4. Moreover, Baker contends that he did not observe Yutzy or Tichnell shove, push, or use excessive force against plaintiff. ECF 21, Exhibit at ¶ 4.

---

[6] As noted, plaintiff alleges that Baker did not arrive until after he was handcuffed.

## STANDARD OF REVIEW

Defendants' motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56.

The purpose of a motion to dismiss is to test the sufficiency of the complaint. *See McBurrey v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010); *Presley v. City of Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006). A plaintiff's complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Notably, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 n. 3, (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (internal citations omitted).

Under Rule 12(b)(6), the court must assume the truth of all well-pleaded allegations in the complaint. *Albright v. Oliver,* 510 U.S. 266, 268 (1994); *Brockington v. Boykins*, 637 F.3d 503, 505-06 (4th Cir. 2011). And, it must construe all factual allegations, and reasonable inferences derived from them, in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir. 1993)). When a party is self-represented, his submissions are liberally construed. *See Erickson v. Pardus,* 551 U.S. 89, 94 (2007).

In evaluating the complaint, the court need not accept unsupported legal allegations. *Revene v. Charles Cnty. Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989). Nor must it agree with legal conclusions couched as factual allegations, *Iqbal,* 129 S.Ct. at 1950, or conclusory factual

allegations devoid of any reference to actual events. *United Black Firefighters v. Hirst,* 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli,* 588 F.3d 186, 193 (4th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] ... that the pleader is entitled to relief.'" *Iqbal,* 129 S.Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)). Thus, "[d]etermining whether a complaint states a plausible claim for relief will...be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

A motion styled in the alternative implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F.Supp.2d 431, 436–37 (D.Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

Generally, a court may not convert a motion to dismiss to one for summary judgment sua sponte, unless it gives notice to the parties that it will do so. *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Board. Unit* 200 *v. Norfolk Southern. Corp.,* 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be

regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials."). However, when, as here, the movants expressly caption their motion "in the alternative" as one for summary judgment, and submit matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metropolitan Washington Airports Authority,* 149 F.3d 253, 261 (4th Cir. 1998).

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id*. at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id*. at 165–67.

Summary judgment is governed by Fed.R.Civ.P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion: "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,*

477 U.S. 242, 247–48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must "set forth specific facts showing that there is a genuine issue for trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed.R.Civ.P. 56(e)). Moreover, the court must "view the evidence in the light most favorable to ... the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Medical Center, Inc*., 290 F.3d 639, 644–45 (4th Cir. 2002).

Ordinarily, summary judgment is inappropriate or premature when "the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours and Co. v. Kolon Industries, Inc,* 637 F.3d 435, 448–49 (4th Cir. 2011). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Technologies Applications & Service Co*., 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed.R.Civ.P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).

If a nonmoving party believes that further discovery is necessary before consideration of

8

summary judgment, the party who fails to file a Rule 56(d) affidavit does so at his peril, because "'the failure to file an affidavit ... is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods*, 302 F.3d at 244 (citations omitted). On the other hand, the nonmoving party's failure to file a Rule 56(d) affidavit does not obligate a court to issue a summary judgment ruling that is obviously premature.

Plaintiff has not filed an affidavit under Rule 56(d). Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d) ] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id*. (internal citations omitted). According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id*. at 244–45 (internal citations omitted).

Although plaintiff has not filed the requisite affidavit seeking discovery, he vigorously opposes the Motion, except as to the Warden. Of course, the court must abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corporation v. Catrett*, 477 U.S. 317, 323–24 (1986)). Nevertheless, the award of summary judgment at this juncture would be premature, except as to the Warden.

## DISCUSSION

### A. Defendant Shearin

Plaintiff does not allege NBCI Warden Bobby Shearin was personally involved in the alleged violations. Rather, the claim against Shearin is based solely upon vicarious liability, otherwise known as respondeat superior. Under § 1983, individual liability must be based on personal conduct. *See Wright v. Collins,* 766 F.2d 841, 850 (4th Cir. 1985); *see also Foote v. Spiegal*, 118 F.3d 1416, 1423 (10th Cir. 1997). Put another way, the doctrine of respondeat superior generally is inapplicable to § 1983 suits. An employer or supervisor is not liable for the acts of employees, in the absence of an official policy or custom that results in illegal action. *See Monell v. Department of Social Services*, 436 U.S. 658, 694, (1978); *Love–Lane v. Martin,* 355 F.3d 766, 782 (4th Cir. 2004).

Under the Eighth Amendment, "[a] prison official's duty . . . is to ensure '"reasonable safety' . . ."' (citation omitted). Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *Brown v. Harris*, 240 F. 3d 383, 390 (4th Cir. 2001) (*citing Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken). Even if the requisite subjective knowledge is established, a prison official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer v. Brennan*, 511 U.S. 825, 844 (1994). Because plaintiff has not alleged any action or inaction on the part of Shearin that resulted in an alleged constitutional injury, Shearin will be dismissed as a defendant.

### B. Defendants Yutzy, Tichnell, and Baker

Under 42 U.S.C. § 1983, a plaintiff must allege a violation of a federal constitutional

right or a right secured by federal law. *See Baker v. McCollan*, 443 U.S. 137 (1979). To state a claim under § 1983, a plaintiff must: 1) "allege the violation of a right secured by the Constitution and laws of the United States"; and 2) "show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir.), *cert. denied*, ____ U.S. ____, 132 S.Ct. 112 (2011).

A convicted inmate's claim of use of excessive physical force is examined in the context of the Eighth Amendment's prohibition against cruel and unusual punishment. *See Whitley v. Albers*, 475 U.S. 312, 319–21 (1986); *see also Wilkins v. Gaddy*, 559 U.S. 34, 130 S.Ct. 1175, 1176–78 (2010) (per curiam); *Hudson v. McMillan*, 503 U.S. 1, 7–9 (1992).[7] Prison officials are charged with balancing competing governmental interests, such as the maintenance of order; protection of correctional officers, prison staff and other inmates; and inmates' rights to be free from cruel and unusual punishment. *See Whitley*, 475 U.S. at 321. When correctional officers use force to keep order, they have little time for considered reflection and must quickly and decisively balance the need to maintain order and restore discipline through force against the risk

---

[7] Curiously, defendants do not directly address plaintiff's claim that he was denied access to the medical unit. In any event, plaintiff neither states the nature of his medical visit nor claims that he suffered injury as a result of the actions alleged.

In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Farmer v. Brennan,* 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed either to provide it or to ensure that the needed care was available. *Farmer v. Brennan*, 511 U.S. at 837. The allegations do not amount to such a claim. Accordingly, this claim will be dismissed, without prejudice.

of injury to inmates. *See Hudson*, 503 U.S. at 6. In excessive force cases, the question of whether force used by prison officials was excessive "turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Hudson*, 503 U. S. at 6 (citation omitted).

This court must look at the need for the application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *See Whitley*, 475 U. S. at 321. The absence of significant injury alone is not dispositive of a claim of excessive force, however. *Wilkens*, 130 S.Ct. at 1178. Rather, the extent of injury is one factor indicative of whether the force used was appropriate in a particular situation. But, if force is applied maliciously and sadistically, liability is not avoided simply because the prisoner had "the good fortune to escape" serious harm. *Id*. at 1179. As the Court said in *Wilkens*, "[i]njury and force . . . are only imperfectly correlative, and it is the latter that ultimately counts." *Id*. at 1178.

In this case, key facts alleged by plaintiff remain unanswered or in dispute. Defendants have not disputed plaintiff's assertion that Yutzy and Tichell knew of a medical order indicating that plaintiff required large handcuffs. Further, defendants do not dispute that plaintiff's alleged injuries resulted from the application of the handcuffs. Moreover, defendants acknowledge plaintiff's wrist size warranted large handcuffs. Yet, defendants do not address why the officers failed to use large size handcuffs and, instead, rigged a substitute.

Moreover, defendants do not dispute plaintiff's assertions that he complained of pain while the handcuffs were placed on him or that his hands turned black afterward. And, it is

12

unclear for how long plaintiff remained restrained in this way before the handcuffs were allegedly loosened.[8] Nor do defendants assert that plaintiff acted in a provocative manner, or that immediate placement of the available handcuffs was necessary, to maintain or restore order and safety.

Genuine disputes as to material fact remain. The factual disputes and questions here can "be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," and thus summary judgment is inappropriate. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255 ("Credibility determinations ... are jury functions, not those of a judge ...."); *see also Ray Communications., Inc. v. Clear Channel Communications, Inc.*, 673 F.3d 294, 305 (4th Cir. 2012).

In the alternative, defendants rely on qualified immunity. "The doctrine of qualified immunity protects police officers and public officials from claims of constitutional violations 'for reasonable mistakes as to the legality of their actions.'" *Merchant v. Bauer*, 677 F.3d 656, 661 (4th Cir. 2012) (quoting *Saucier v. Katz*, 533 U.S. 194, 206 (2001)), *cert. denied*, ___ U.S. ___, 133 S. Ct. 789 (2012). Qualified immunity shields government officers from liability for conduct that "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

The qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*

---

[8] As noted, plaintiff avers that Sergeant Baker did not arrive until after the handcuffs were placed on plaintiff. Plaintiff states that he "thought it would be best to refrain from complaining any further and say no more" because of the officers' use of force. ECF 23 at 2.

13

*v. Callahan,* 555 U.S. 223, 231 (2009). Thus, "officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful" will be entitled to immunity from suit. *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir.) (*en banc*), *cert. denied*, ___ U.S. ___, 133 S. Ct. 781 (2011); *accord Durham v. Horner*, 690 F.3d 183, 188 (4th Cir. 2012). "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs,* 475 U.S. 335, 341 (1986)).

"The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Pearson*, 555 U.S. at 231 (citation omitted). Because qualified immunity turns on the "objective reasonableness of an official's conduct, as measured by reference to clearly established law," *Harlow*, 457 U.S. at 818, an officer who makes an honest but objectively unreasonable mistake is not protected by qualified immunity. "Although officers are only human and even well-intentioned officers may make unreasonable mistakes on occasion, the doctrine of qualified immunity does not serve to protect them on those occasions." *Purnell*, 652 F.3d at 535.

The qualified immunity analysis can be separated into two inquiries: 1) whether the facts alleged, "[t]aken in the light most favorable to the party asserting the injury, ... show the officer's conduct violated a constitutional right," *Saucier*, 533 U.S. at 201; and 2) whether the right at issue "'was clearly established in the specific context of the case-that is, [whether] it was clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted.'" *Merchant*, 677 F.3d at 662 (citation omitted). Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be

addressed first in light of the circumstances in the particular case at hand." *Pearson,* 555 U.S. at 236; s*ee also Merchant*, 677 F.3d at 661–61 (stating that the "two inquiries ... may be assessed in either sequence").

The second inquiry "turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Messerschmidt v. Millender*, ___ U.S. ___ , 132 S. Ct. 1235, 1245 (2012) (citation and some internal quotation marks omitted). "To be clearly established, a right must be sufficiently clear 'that every reasonable official would [have understood] that what he is doing violates that right.' In other words, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Reichle v. Howards*, ___ U.S. ___, 132 S.Ct. 2088, 2093 (2012) (quoting *Ashcroft v. al-Kidd*, 563 U.S. ___, 131 S.Ct. 2074, 2078, 2083 (2011)) (some internal quotation marks and citations omitted). "If the law at th[e] time [of the alleged violation] was not clearly established," the official will be entitled to qualified immunity, because "an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." *Harlow*, 457 U.S. at 818. On the other hand, "[i]f the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Id*. at 818–19.

The court recognizes the value of an early determination of immunity defenses. *See Torchinsky v. Siwinski*, 942 F.2d 257, 260–61 (4th Cir.1991). But, the determination of whether defendants are entitled to qualified immunity is more appropriately addressed after the facts of the case have been further developed. Accordingly, dismissal of plaintiff's complaint based on

qualified immunity is not proper at this time.

## CONCLUSION

For these reasons, summary judgment will be entered in favor of Warden Bobby Shearin, and he will be dismissed as a defendant in this proceeding. Summary judgment will be denied as to defendants Yutzy, Tichnell, and Baker. A separate Order shall be entered in accordance with this Memorandum.

July 30, 2013  /s/
Date  Ellen Lipton Hollander
 United States District Judge